# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Jacquelyn Cordes, | ) | Court File No. 10-CV-1344  RHK/FLN |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S RESPONSE IN** |
| v. | ) | **OPPOSITION TO PLAINTIFF** |
| | ) | **JACQUELYN CORDES' MOTION** |
| Frederick J. Hanna & Associates, P.C., | ) | **FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |

_____

Defendant, Frederick J. Hanna & Associates, P.C. ("Hanna"), submits the following Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. Hanna respectfully requests that the Court deny the motion.

## I.   SUMMARY OF THE ARGUMENT

Plaintiff claims Hanna violated the Fair Debt Collection Practices Act ("FDCPA") as a matter of law in two respects: (1) by leaving a voice message on Plaintiff's voice message service that was overheard by her live-in boyfriend in violation of 15 U.S.C. § 1692c(b), which prohibits third party communications, and (2) by sending a letter to Plaintiff on firm letterhead in violation of 15 U.S.C. § 1692e, which prohibits falsely representing or implying that an individual is an attorney or that a communication is from an attorney.  Plaintiff misapplies the law and arrives at an erroneous conclusion.

The FDCPA was meant to guard against "abusive debt collection practices by debt collectors" and "to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).  The

prohibition on communications with third parties was meant to prevent debt collectors from *contacting* a debtors' employers, friends, and relatives to harass or abuse the debtor. 15 U.S.C.§ 1692 §§ 1692c, 1692d; S. Rep. 95-382, p. 34.  There is no evidence that Hanna violated the purpose of the FDCPA in its efforts to collect Plaintiff's debt.

Hanna left several voice messages over the course of two months on Plaintiff's password-protected voice message service, each time disclosing that Hanna was a debt collector and requesting Plaintiff call Hanna.  Plaintiff did not delete these messages nor did she ever contact Hanna to request that Hanna not leave any further messages on her home message service.  At some point, Plaintiff's boyfriend listened to at least one of the messages.

A representative from Hanna has testified that Hanna did not intend to disclose any information to Plaintiff's boyfriend or any other third party when it left messages on Plaintiff's home message service.  Any disclosure was inadvertant, and not the abusive or harassing type of conduct the FDCPA guards against.  Further, the United State District Court, District of Minnesota, has spoken to this issue – whether or not a voice message overheard by a third party violates the FDCPA – and suggested on two occasions that it does not.  Other jurisdictions agree.  As a matter of law, Hanna's voice message did not violate the FDCPA's prohibition on third party communications.  However, even if the Court were to adopt Plaintiff's broad statement of the law, material issues of fact preclude summary judgment on this issue.

Similarly, an unsigned letter sent to Plaintiff on law firm letterhead does not violate the FDCPA's prohibition against falsely representing or implying that an

individual is an attorney or that a communication is from an attorney. The communication was from an attorney, and sent at an attorney's instruction. As a matter of law this conduct is not a violation of the FDCPA. But even if this Court were to disagree, there are material issues of fact that preclude summary judgment in Plaintiff's favor. Hanna therefore requests Plaintiff's Motion for Partial Summary Judgment be denied.

## II.   FACTUAL BACKGROUND

### *The Debt*

Frederick J. Hanna & Associates, P.C. is a creditors' rights law firm. (Affidavit of Paulette S. Sarp, Ex. 1 at 7-8).[1] On December 2, 2009, Chase Credit Card placed a new account with Hanna for collection. (Ex. 1 at 14-16). Prior to receiving accounts from Chase Credit Card ("Chase"), Chase apprises Hanna what type of account it is, the age of the account, and other specifics about the file. (Ex. 1 at 14-15). This particular account was an unpaid credit card balance of $4,230.67 belonging to Plaintiff Jacqueline Cordes. (Ex. 1 at 16-17).

### *Hanna's Collection Efforts*

Hanna contacts debtors in a number of ways, including in person and auto-dialing telephone calls to the debtor, and by sending form letters and customized letters to debtors regarding their debts. (Ex. 1 at 23-24). While Hanna is a law firm with numerous attorneys, Hanna also employs non-lawyers to assist the attorneys with their

---

[1] All references to "Ex." are to exhibits attached to the supporting Affidavit of Paulette S. Sarp.

121280611v1  0913857  46181

practice. (Ex. 1 at 46-48). Employees are trained to comply with the FDCPA and provided with a script to utilize when contacting debtors in certain situations. (Ex. 1 at 26-27). A licensed attorney of Frederick J. Hanna & Associates, P.C., drafted the form letter sent to Plaintiff, and many other form letters used by his law firm, and he instructs his employees as to under what circumstances they should send these letters to debtors. (Ex. 1 at 44-47). The at issue letter may only be sent when a debt is not disputed, when there have been no payments, if the debtor has not promised a future payment, when the debtor is not in bankruptcy, and only if the debtor is alive. (Ex. 1 at 44-47).

In order to prevent disclosing debt related information to third parties, Hanna has policies and procedures in place. (Ex. 1 at 37). Hanna instructs and trains their employees not to call third parties and tell them why they are trying to reach any particular debtor. (Ex. 1 at 37). Employees are also instructed not to leave messages with debtors' employers or neighbors. (Ex. 1 at 37). At his deposition, Mr. Frederick J. Hanna confirmed that Hanna did not intend to disclose any information to Mr. Pitsch or any other third parties at any time when it was attempting to collect Plaintiff's debt. (Ex. 1 at 48-49).

In their efforts to obtain payment for this debt, Hanna placed automated and in-person telephone calls to Plaintiff Cordes. (Ex. 1 at 23-33). At issue in this litigation are several voice messages left on Plaintiff Cordes' voice message service at her residence between December 3, 2008 and January 20, 2009. (*See generally* Complaint) ("Dkt. No. 1"). Hanna left three voice messages on Plaintiff's automated voice message service in December. (*See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial

121280611v1  0913857  46181

Summary Judgment at 2-3).  Each of these messages was directed to "Jacquelyn Cordes" and instructed "If you are not Jacquelyn, hang up and disconnect immediately":

> This message is for Jacquelyn Cordes.  If you're not Jacquelyn, hang up and disconnect immediately.  Please contact Ms. Brown with the law office of Frederick J. Hanna at the toll-free number 1-866-375-4232 at extension number 4122.  This message is from a debt collector.  Ms. Cordes I need to hear from you in my office as soon as possible.

(Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 2-3).  Hanna left four additional voice messages for Cordes in January.  (Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 2-3).

### *Plaintiff Cordes' Living Situation*

At the time Hanna left its first voice message in December of 2010, Plaintiff Cordes had been living in a mobile home with her then boyfriend, David Pitsch ("Pitsch"), and their son for approximately six years.  (Ex. 3 at 14).  During this time, Plaintiff and her boyfriend/roommate had numerous financial difficulties.  (Ex. 3 at 25-27).  Plaintiff had three credit card accounts in default and was receiving letters regarding at least two of her delinquent accounts at the mobile home.  (Ex. 3 at 25-27).  Plaintiff's live in boyfriend was also burdened by credit card debt, which was also in collections.  (Ex. 4 at 32-33).

In approximately the early fall of 2010, Plaintiff's boyfriend invited another woman, Jessica Joiner – "a friend of his" – that he met on Myspace to move into the mobile home and help with the rent.  (Ex. 3 at 14, 20; Ex. 4 at 27, 32).

121280611v1  0913857  46181

Plaintiff and Mr. Pitsch maintained an automated voice message service as opposed to a physical answering machine. (Ex. 4 at 44-46). In order to find out if they had a voice message they were required to pick up their receiver and listen for a certain dial tone signaling a voice message. (*Id.*) In order to retrieve the message, *individuals needed to enter a code*. (*Id.*) When Ms. Joiner moved in, Plaintiff and Mr. Pitsch gave her the code to retrieve voice messages until she obtained a cellular phone – which she promptly did. (Ex. 4 at 44-45). The outgoing message on the voice message service stated:

> You have reached 952-686-8325. Sorry we are unable to answer the phone. Please leave a message at the tone. Beep. If you would like to reach Jessica Joiner, she can be reached at [her telephone number].

(Ex. 2, No. 1). Although it's David Pitsch's voice on the outgoing message, there is some question as to whether the actual audio recording sounds like a man or a woman. (Ex. 3 at 36).

### Receipt of the Voice Messages

Plaintiff listened to the at issue voice messages, but did not delete the messages or call Hanna to request Hanna stop calling or to advise that third persons had access to her home voice message service. (Ex. 3 at 49, 50). Mr. Pitsch also listened to at least one of the messages and admits the voice message instructed him to hang up if he was not "Jacquelyn," but that he listened to the voice message anyway. (Ex. 4 at 47-48). Ms. Joiner overheard one of the voice messages only when Plaintiff's boyfriend put the voice message on speaker phone. (Ex. 5 at 16-18).

Mr. Pitsch confronted Plaintiff regarding the voice message.   (Ex. 4 at 50).
Primarily, Mr. Pitsch wanted the issue to be taken care of, and asked her why she had not
addressed the issue with the money he gave her every month.   (Ex. 4 at 50).   According
to Mr. Pitsch, Plaintiff said nothing, and stared at him blankly.   (Ex. 4 at 50).   Later,
Plaintiff told Mr. Pitsch that she would take care of it, but Plaintiff made no arrangements
for payment.   (Ex. 4 at 53).   Frustrated with her lack of candor and refusal to take care of
the debt with the funds he provided, Mr. Pitsch asked Plaintiff to move out.   (Ex. 4 at 53).
Mr. Pitsch continued to live with Ms. Joiner and shortly thereafter Mr. Pitsch and Ms.
Joiner revealed that they were dating.   (Ex. 3 at 9-10, 58).   They are now engaged to be
married.   (Ex. 4 at 30).[2]

### III.   THE SUMMARY JUDGMENT STANDARD PRECLUDES PARTIAL SUMMARY JUDGMENT.

Summary judgment is appropriate only "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine issue as to
any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(c).   In considering a motion for summary judgment, a court "must view the

---

[2] Plaintiff alleges as damages that Mr. Pitsch's hearing of this voicemail message from Hanna was the sole cause of their breakup and that but for this message, they would have gone on to marry.   Hanna disputes this claim and has obtained evidence that creditors other than Hanna were leaving messages, sending letters, and serving collection lawsuits on Plaintiff during the same time period that Hanna contacted Plaintiff.   Hanna does not intend to attach to this Response all of the evidence it has obtained that directly undercuts Plaintiff's alleged damages.   However, Hanna is compelled to at least reference this evidence given that Plaintiff chose to describe her alleged damages in her opening Motion even though her Motion does not seek a ruling as to damages and Plaintiff's damages are irrelevant to the issue of liability.

121280611v1  0913857  46181

evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004). The law favors Defendant Hanna on the two issues raised – not Plaintiff. Plaintiff simply cannot establish as a matter of law that Hanna violated the FDCPA in its communications with her.

## IV.   THE PROHIBITION AGAINST "COMMUNICATION WITH THIRD PARTIES" DOES NOT PROHIBIT VOICE MESSAGES LEFT AT THE DEBTOR'S RESIDENCE SPECIFICALLY ADDRESSED TO THE DEBTOR.

The plain language of 15 U.S.C. § 1692c(b), the legislative history, and the case law interpreting the statute establish that a voice message left on a debtor's voice message service does not violate the Fair Debt Collection Practices Act.

**A.     The plain language of §1692c(b) does not state or imply that a voice message left on a debtor's voice message service is a prohibited communication with a third party.**

"[The] starting point in every case involving construction of a statute is the language itself." *Southeastern Community College v. Davis,* 442 U.S. 397, 405 (1979). The court need inquire no further when the statutory language is plain and nothing in the FDCPA's structure and relationship to other statute calls its meaning into question. *Amoco Production Co. v. Village of Gambelo, Alaska,* 480 U.S. 431, 552-553 (1987). The language of §1692c(b), titled "Communication with Third Parties," provides:

> Without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

121280611v1  0913857  46181

15 U.S.C. § 1692c(b).  Accordingly, the question here is whether Hanna communicated with a third party without Plaintiff's consent in connection with Plaintiff's debt.

The facts of this case are uncontroverted.  Hanna left a number of voice messages on Plaintiff's voice message service at her residence.  Hanna did not call or correspond or in any other way "communicate" with a third party regarding Ms. Cordes' debt.  If there was any third party disclosure in this case, it was a result of Plaintiff granting others access to her voice message service.  This is not conduct prohibited by the FDCPA.

**B.     The legislative history of the FDCPA also confirms that a voice message left on a debtor's voice message service is not a prohibited communication with a third party under § 1692c(b).**

To determine intent, courts look at the Congressional purpose expressed in the FDCPA, the relevant legislative history, and the interpretation placed on it by the federal administrative agency charged with its enforcement.  *United States v. Hohri,* 482 U.S. 64, 70 (1987); *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 737 (1985).  Congress did not intend the prohibition of third party communications under § 1692c(b) to apply to a voice message left on a voice message service.

The express purpose of the FDCPA, as stated in the FDCPA itself, is three-fold: "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In furtherance of these purposes, the FDCPA identified common abuse of debt collection practices, such as late night telephone calls, embarrassing communications through third parties, harassment, and

121280611v1  0913857  46181

false and misleading representations by debt collectors.   15 U.S.C. §§ 1692c(a)(1), 1692d, and 1692e.

None of these purposes – least of all to ensure that those debt collectors who *refrain* from using abusive debt collection practices are not competitively disadvantaged – is served by prohibiting a debt collector who otherwise has complied with all statutory requirements from leaving a voice message on a debtor's voice message service. Moreover, in establishing a restriction against communications with third parties, the Senate Committee on Banking, Housing, and Urban Affairs, stated:

> In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in fifteen states:  it prohibits disclosing the consumer's personal affairs to third persons.  Other than to obtain location information, a debt collector may not ***contact*** third persons such as consumer's friends, neighbors, relatives, or employer.  Such ***contacts*** are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.

S. Rep. 95-382, p. 34, reprinted at 1997 U.S.C.C.A.N. 1695, 1699 (emphasis added). Clearly the prohibition on third party communications was meant to curtail collectors *contacting* third parties to harass and cause embarrassment to the debtor.  *See also* S. Rep. 95-382, p. 2, reprinted at 1997 U.S.C.C.A.N. 1695, 1696 (stating the legislation's "purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.") (emphasis added).  Hanna did not contact a third party in an attempt to harass or abuse Plaintiff and Hanna's conduct is not the type of conduct the FDCPA sought to prohibit.

121280611v1  0913857  46181

**C.      Cases interpreting § 1692c(b) warrant a finding that the message left at Plaintiff's home did not violate § 1692c(b).**

The Eighth Circuit has not been asked to decide whether a voice message overheard by a third party violates § 1692c(b) of the FDCPA.  The United States District Court, District of Minnesota has, however; voluntarily spoken to the issue on more than one occasion – each time suggesting that a voice message overheard by a third party does not violate § 1692c(b).

The United States District Court, District of Minnesota first addressed this issue in 2008 in *Baker v. Allstate Financial Servs., Inc.*, 554 F. Supp. 2d 945 (D. Minn. 2008) (Ericksen, J.).  The Court examined whether a debt collector was required to disclose their identity as a debt collector when leaving a voice message at a debtor's residence in order to comply with the meaningful disclosure requirement of § 1692c(b).  *Id.* at 950. Defendant argued § 1692c(b) of the FDCPA (the third party disclosure provision at issue in this case) prevented a debt collector from disclosing it was a debt collector in a voice message because it might be overheard by a third party.  *Id.* at 950.  The Honorable Judge Ericksen dismissed defendant's argument, noting "This argument has been repeatedly rejected in the context of debt collector messages left on a consumer's home voicemail." *Id.* (*citing Costa v. Nat'l Action Fin. Servs.*, 2007 WL 4526510, *5 (E.D. Cal. 2007) (dismissing defendant's argument that disclosing that it was a debt collector on debtor's answering machine exposed him to the danger of a violation of § 1692c(b) because the voice message was left of the debtor's home answering machine and the FDCPA was concerned with _deliberate_ disclosures to third parties); *Hosseinzadeh v. M.R.S. Assocs.,*

121280611v1  0913857  46181

*Inc.*, 387 F. Supp. 2d 1104, 1111-1112 (C.D. Cal. 2005) (rejecting the same argument (that there was a danger of a § 1692c(b) violation) because the FDCPA is concerned with *deliberate* disclosures to third parties); *Joseph v. J.J. MacIntyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1165 (N.D. Cal. 2003) (also rejecting the same argument because the FDCPA is concerned with *deliberate* disclosures to third parties); and *Leyse v. Corporate Collection Servs., Inc.*, 2006 WL 2708451 (S.D.N.Y. 2006) (discussing the tension between the meaningful disclosure and third party disclosure provisions of the FDCPA when a debt collector elects to leave a voice message for a debtor).

The United States District Court, District of Minnesota, again voluntarily addressed this issue a year later in *Mark v. J.C. Christensen & Assocs.*, considering again whether a debt collector must disclose they are a debt collector when leaving a voice message on a debtor's answering machine. *Mark v. J.C. Christensen & Assocs.*, 2009 WL 2407700 (D. Minn. 2009) (Montgomery, J.). In *Christensen*, defendant again argued it could not disclose it was a debt collector on an answering machine without risking a § 1692c(b) violation should the voice message be overheard by a third party. *Id.* at *5. The Honorable Judge Montgomery rejected this argument, stating the FDCPA was intended to protect against *deliberate* disclosures to third parties meant to embarrass the debtor – not inadvertant disclosures that may occur if another overhears a voice message:

> The risk of disclosure to third parties here was minimal and comes as a result of JCC's selection of what it views as being the easiest or most cost effective method of attempting to collect debts. There is no indication that others shared Mark's answering machine and, more importantly, no allegations that JCC, when it left the messages, deliberately intended that they be heard by third parties. The *FDCPA was intended to protect against deliberate disclosures to*

third parties as a method of embarrassing the consumer, *not to protect against the risk of an <u>inadvertent</u> disclosure* that could occur if another person unintentionally overheard the messages left on Mark's answering machine.   Thus JCC's argument that it faced liability under § 1692c(b) had it made the required disclosures in the message left on Mark's answering machine is rejected.

*Id.* at *5 (emphasis and underlining added) (internal citations omitted).[3]

Plaintiff relies on Florida, New Jersey, and Alabama District Court decisions in support of her Motion for Partial Summary Judgment.   None of these decisions are controlling, and other courts disagree.  *See Chlanda v. Wymard*, 1995 WL 17917574, *2 (S.D. Ohio 1995) (holding a collector only violates § 1692c(b) if he or she had reason to anticipate that another person would retrieve the voice message) *and Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 660, n.26 (S.D.N.Y. 2006) (holding that while the court does not reach the question of whether some pre-recorded telephone messages might comply with both § 1692e(11) and § 1692c(b) of the FDCPA, that case law suggests a voice message left on a debtor's answering machine overheard by a third party is not a violation of § 1692c(b) unless it is deliberate); *see also* case law cited on pages 11-12 of this Response, *supra*.

The United States District Court, District of Minnesota and others jurisdictions have addressed this issue, arriving at the correct conclusion – that a voice message left on

---

[3]  The Court went on to hold that even accepting defendant's argument as true (that the FDCPA presents debt collectors with the unavoidable dilemma of violating either the meaningful disclosure provision of the FDCPA or the third party disclosure provision of the FDCPA when leaving a voice message) that the restrictions are nevertheless constitutional. *Mark v. J.C. Christensen & Assocs.*, 2009 WL 2407700, *5 (D. Minn. 2009).

a debtor's voice message service that is overheard by a third person is not a violation of the FDCPA unless the debt collector intended to disclose to a third party.  There is not evidence of such an intent here.  At best from Plaintiff's perspective, there are material issues of fact on this issue that preclude summary judgment in Plaintiff's favor.

## V.   THE PROHIBITION AGAINST A "FALSE REPRESENTATION OR IMPLICATION THAT ANY INDIVIDUAL IS AN ATTORNEY OR THAT ANY COMMUNICATION IS FROM AN ATTORNEY" DOES NOT PROHIBIT A LAW FIRM FROM SENDING AN UNSIGNED LETTER TO A DEBTOR ON LAW FIRM LETTERHEAD.

Section 1692e of the Fair Debt Collection Practices Act prohibits "false or misleading representations."  The legislation provides that a "false representation or implication that any individual is an attorney or that any communication is from an attorney" is a violation of this section:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> …
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

*Id.*  Hanna sent Plaintiff a letter on February 9, 2009.  The letter conveyed a settlement offer and while a form letter, the content of the letter was created by a lawyer, Mr. Frederick J. Hanna, and sent pursuant to this attorney's specific standing instructions. The letter was on law firm letterhead and was signed, not by a specific attorney, but with the typewritten text "Frederick J. Hanna & Associates."  Plaintiff does not dispute that Frederick J. Hanna & Associates is a law firm or that Frederick J. Hanna is an attorney.

121280611v1  0913857  46181

On its face, the letter does not falsely represent or imply that any individual that is not an attorney is an attorney.  Nor does it falsely imply that the communication is from an attorney.  It states it is from a law office – which it is.

While the Eighth Circuit has not been asked to address whether a lawyer violates § 1692e of the Fair Debt Collection Practices Act when a law firm staff member sends an unsigned letter on law firm letterhead to a debtor pursuant to an attorney's directions and instructions, the United State District Court, District of Minnesota has addressed a similar question in the past.  In *Danielson v. Hicks*, this Court considered whether a form Dunning letter, generated and sent by secretaries pursuant to attorney-developed procedures, and which bears a stamp of an attorney's signature violates § 1692e – and answered it in the negative.  *Danielson v. Hicks*, 1995 WL 767290, *4.  The Honorable Michael J. Davis held that letters from law firm Messerli & Kramer sent by non-attorneys pursuant to the implicit direction of an attorney did not violate § 1692e of the Fair Debt Collection Practices Act.  *Id.*  The *Danielson* court distinguished other cases cited by plaintiff (from outside this jurisdiction), noting "[Plaintiff's] reliance upon *Clomon v. Jackson*[4] and *Martinez v. Albuquerque Collection Services, Inc.* is misplaced.  Both *Clomon* and *Martinez* involved letters containing an attorney's signature which were, in

---

[4]  Plaintiff Cordes also relies on this distinguishable case.

121280611v1  0913857  46181

fact, *generated from a debt collection agency rather than from an attorney's office*." *Id.* (emphasis added).[5]

The *Danielson* court was not the only U.S. District Court to arrive at this conclusion.  In *Mizrahi v. Network Recovery Services, Inc.*, the court considered the identical facts and arrived at the same conclusion. *Mizrahi v. Network Recovery Services, Inc.*, 1999 WL 33127737, *6 (E.D.N.Y. 1999) (holding letters prepared by law firm staff, on law firm letterhead, bearing the stamp of an attorney's name, and sent pursuant to an attorney's standing instructions, did not violate § 1692e of the FDCPA).  The *Mizrahi* court also noted the facts of *Mizrahi* were different than cases where an attorney lent their letterhead to a debt collection agency.  *Id.* at *4.  The court explained that sending out these initial letters required little to no legal skill, and as long as the attorney had proper procedures in place, delegating the letters to her paralegals was not inappropriate:

> [T]he involvement of the defendant Chirtina Miller Milone in the process is both personal and substantial.  Unlike the letters in *Clomon*, the letters here were from the defendant in every meaningful sense of that word.  Nor is this conclusion undermined by the fact that the in-depth review of the NYHQ referrals, following the initial scan of all of them by Ms. Milone, are divided between her and two paralegals.  The review required here is relatively uncomplicated and hardly requires legal training.  Indeed, this is the kind of case in which an attorney could reasonably rely on the information supplied by the client without any in-depth review.

---

[5]  Hanna recognizes that a Minnesota District Court held to the contrary in *Sonmore v. Checkrite Recovery Servs., Inc.*, 187 F. Supp. 2d 1128 (D. Minn. 2001) (Aslop, J.) in analyzing a letter that contained an attorney's stamped signature.  Whether the Court had the benefit of the *Danielson* decision and discussion is not clear.  Hanna submits for the reasons stated above the *Danielson* decision is the more persuasive decision.

*Id.* at *4.   As in *Danielson* and *Mizrahi*, Hanna, a law firm, sent letters pursuant to an attorney's standing specific instructions.   Hanna did not lend its letterhead to a collection agency.   The reasoning espoused in *Danielson* and *Mizrahi* also should apply here. Further, Hanna's letter was not signed by a specific attorney like the letters in *Danielson* and *Mizrahi*, but by the law firm generally, all the more reason the particular letter that Hanna sent to Kimball does not violate the FDCPA.[6]

In summary, the United States District Court, District of Minnesota, arrived at the correct result when it first addressed this issue in *Danielson* and the same reasoning should apply to Plaintiff's claims against Hanna. The letter Hanna sent to Plaintiff does not falsely represent or imply that any individual that is not an attorney is an attorney. Nor does it falsely imply that the communication is from an attorney.   Hanna therefore requests that Plaintiff's Motion for Partial Summary Judgment on this issue be denied.

## VI.   CONCLUSION

For the foregoing reasons, Defendant Hanna respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

---

[6] Plaintiff cites to no Minnesota decisions in support of her Motion.

Dated:  April 29, 2011                    HINSHAW & CULBERTSON LLP


                                          By:  s/ Paulette S. Sarp
                                          Thomas P. Kane, Reg. No. 00053491
                                          Paulette S. Sarp, Reg. No. 351453
                                          Nadia B. Hasan, Reg. No. 386744
                                          Accenture Tower, Suite 2000
                                          333 South Seventh Street
                                          Minneapolis, MN 55402
                                          Telephone: 612-333-3434
                                          Fax: 612-334-8888
                                          tkane@hinshawlaw.com
                                          psarp@hinshawlaw.com
                                          nhasan@hinshawlaw.com

                                          ATTORNEYS FOR DEFENDANT

121280611v1  0913857  46181