**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 10-cv-1344 RHK/FLN**

| | |
|---|---|
| Jacquelyn Cordes,<br><br>               Plaintiff,<br>v.<br><br>Frederick J. Hanna & Associates, P.C.,<br><br>               Defendant. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT** |

      This is not a case in which the Court is presented with opposing facts or disparate descriptions of the events leading to Plaintiff's filing of this case. Rather, the parties agree, for the most part, as to the following substantive and material facts and/or conclusions:

    1) Defendant communicated with Plaintiff's former boyfriend and their roommate in connection with a debt by way of multiple voice messages left on their shared answering system that disclosed the existence of the debt.

    2) Defendant sent Plaintiff a written communication which implied it originated from an attorney and/or that an attorney was involved in its sending when neither was true.

      The facts supporting 1) and 2) above, for the most part, have been sufficiently described by the parties in their principal submissions and shall not be reiterated by

1

Plaintiff herein.[1] As stated in Plaintiff's original memorandum and as affirmed in Defendant's memorandum, the following facts are true and undisputed:

- Plaintiff, an individual consumer, incurred a consumer credit card debt and fell behind on payments.

- The debt was placed with Defendant for collection.

- Defendant engaged in debt collection activity that included leaving multiple voice messages on a shared voice mail system at the shared home[2] of Plaintiff, her former boyfriend, and their roommate.[3]

- The messages indicated the calls were from Defendant, a debt collector, in connection with an attempt to collect a debt from Plaintiff.[4]

---

[1] However, it should be noted that a number of immaterial facts interjected by Defendant in an effort to detract from the legal questions posed by this case will be briefly addressed in turn as they relate to portions of Defendant's arguments in opposition to Plaintiff's Motion.

[2] Defendant has made it a point to needlessly interject the fact that the home shared by Plaintiff, Pitsch and Joiner was a "mobile home," rather than simply a "home." Plaintiff is not aware of any distinction in the law based on whether the consumer resides in a mobile home as opposed to a single family home.

[3] Plaintiff takes issue with the unsupported and offensive implication that Joiner was anything other than a friend and roommate at the time she shared a home with Pitsch and Plaintiff. This has been contradicted repeatedly in deposition testimony by all three.

[4] As pointed out by Defendant, some, but not all, of Defendant's messages purportedly instructed the listener to "hang up and disconnect immediately" if they were not "Jacquelyn Cordes," right before disclosing the purpose of Defendant's communications. There is no evidence that Plaintiff's voice mail system would have allowed the listener to skip the message and save it for Plaintiff to listen to at a later time, or that the listener had the ability to hang up and/or delete the message before hearing its entirety in order to skip to any additional messages. Moreover, Defendant had no reason to believe any third party receiving the message, over whom Plaintiff has no control, would actually comply with Defendant's instruction to stop listening.

- The shared voice mail system had an outgoing greeting recorded by Plaintiff's former boyfriend, David Pitsch, and referred to another roommate, Jessica Joiner, who lived with the couple and contributed to the monthly rent payment.[5]

- There were no live contacts between Plaintiff and Defendant before the voice messages were left by Defendant. Plaintiff never spoke with Defendant and never gave permission to speak with Pitsch or Joiner about the debt.

- Pitsch retrieved and listened to the messages, and subsequently confronted Plaintiff with the information he learned through the messages.

- Pitsch listened to at least one of the messages over speaker phone, which was also heard by their roommate Jessica Joiner.

- Neither Pitsch nor Joiner had any knowledge of Plaintiff's debt prior to hearing the messages left by Defendant.

- Defendant sent Plaintiff a letter dated February 9, 2010, the contents of which are undisputed.

---

[5] Defendant asserts there is "some question as to whether the actual audio recording sounds like a man or a woman." *Doc. No. 42 at p. 6.* While completely irrelevant, there is no such question as to whether the outgoing greeting that would have been heard by Defendant's agents before they left messages was in a male voice. Plaintiff and Pitsch both confirmed it was Pitsch's voice reciting the outgoing greeting at the time Defendant's telephone calls were placed, and there is no question that Pitsch is a man. During the taking of Plaintiff's deposition, however, defense counsel essentially testified that when she listened to the recording of the outgoing greeting, she thought it "sounded like a female." *See Cordes Depo. at 35:1-14.*

3

- No attorney[6] had reviewed Plaintiff's account as of February 9, 2010.

- Plaintiff and Pitsch's relationship ended as a result of Defendant's conduct in disclosing Plaintiff's debt to Pitsch.[7]

   i. *Defendant violated Section 1692c(b) by communicating with two third parties.*

The plain language of Section 1692c(b) clearly prohibits third party *communications*, rather than the act of specifically contacting third parties with intent. Defendant is asking the Court to ignore the plain language of the Act, and apply a scienter requirement, although there is no such requirement that Plaintiff plead, let alone prove, that Defendant intended to violate the Act. Such a requirement as part of an action under Section 1692c(b) has been rejected repeatedly, and was most recently rejected by

---

[6] Defendant's Memorandum characterizes Defendant as "a law firm with numerous attorneys" that also "employs non-lawyers to assist the attorneys with their practice." *Doc. No. 42 at p. 3.* This representation is misleading. As stated in Plaintiff's original memorandum based upon Defendant's deposition testimony, Defendant employs approximately 500 people total in four separate locations. Of those 500 employees, only 12 are licensed attorneys. Accordingly, while Defendant may be a "law firm," the reality is that Defendant employs attorneys to assist non-attorney debt collectors with their debt collection efforts.

[7] Plaintiff takes issue with Defendant's mischaracterization that something other than Defendant's conduct led Pitsch to force Plaintiff to move out of their shared home, as well as the completely false implication that Pitsch gave money to Plaintiff to pay the debt in question and that she "refused" to take that money and pay it.

Moreover, Defendant has falsely represented that it has "obtained evidence that creditors other than Hanna were leaving messages…" *Doc. No. 42.* There is <u>no</u> such evidence whatsoever on the record or elsewhere. While the public record reveals that Plaintiff was apparently sued (without her knowledge) in connection with other debts <u>after</u> she moved out of the shared home, there is absolutely nothing to indicate anyone other than Defendant left messages at the residence. In any event, these issues have no bearing on whether Defendant violated the Act, however, and therefore will not be mulled over in this Reply Memorandum.

Judge Joan Ericksen in the District of Minnesota in a similar case in which the plaintiff alleged a debt collector left messages on her family's shared voice mail systems, which were overheard by her children. *See Zortman v. J.C. Christensen & Associates, Inc.*, 2011 WL 1630935, Civ. No. 10–3086 (JNE/FLN) (D.Minn. April 26, 2011).[8]

In *Zortman v. J.C. Christensen & Associates*, the Court was confronted by the very same issues raised by Defendant in this case. In *Zortman*, the defendant debt collector urged that judgment on the pleadings should be entered because Defendant did not purposefully or deliberately disclose the debt information to a third party, and premised its argument on the same "*Foti*" basis emphasized by the defendant in the *Mark* case decided by Judge Ann Montgomery.[9] Specifically, J.C. Christensen argued that the

---

[8] An Amended Order was filed on April 29, 2011 to correct a reference in the first paragraph of the original Order. See *Zortman v. J.C. Christensen & Associates, Inc.*, 2011 WL 1630935, Civ. No. 10–3086 (JNE/FLN) (D.Minn. April 29, 2011).

[9] *See Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y.2006), interpreting 15 U.S.C. §§ 1692d(6) and 1692e(11) (2006). Section 1692d(6) generally requires a "disclosure of the caller's identity" when a debt collector places a telephone call. Courts have construed § 1692d(6) as requiring a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business. *Baker v. Allstate Fin. Servs., Inc.,* 554 F.Supp.2d 945, 949–50 (D.Minn.2008) (collecting cases). Section 1692e(11) requires the debt collector to disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" in the initial communication with the consumer, and it requires the debt collector to disclose "that the communication is from a debt collector" in later communications.
After *Foti*, *Mark v. J.C. Christensen & Associates, Inc.,* Civil No. 09–100 ADM/SRN, 2009 WL 2407700 (D.Minn. Aug. 4, 2009) was decided in this District. The Mark Court was not confronted with the same issues as presented in this case as the claims were based upon a different portion of the FDCPA. In *Mark,* the debt collector left semi-anonymous messages for the consumer that only stated the caller's first name and did not disclose the name of the company or the nature of the call. Mark alleged that leaving such messages violated §§ 1692d(6) and 1692e(11). The debt collector argued that messages did not violate the FDCPA because they (1) were not communications; (2) were not

same type of voicemail messages as in the case at bar here were "in full compliance with the FDCPA and as directed by the U.S. District Court for the District of Minnesota in *Mark* " and that no violation of § 1692c(b) can occur without a purposeful or deliberate disclosure to a third party. The *Zortman* Court rejected J.C. Christensen's argument and its conclusion that there was such a holding in *Mark*:

> *Mark* held that certain semi-anonymous messages *violated* the FDCPA because the messages did not include certain disclosures; it is a logical error to conclude that this holding implies that messages with the disclosures will be necessarily in compliance with the FDCPA. Although JCC may appeal to the implications of the reasoning in *Mark,* it cannot argue that *Mark* held that messages like those at issue here do not violate the FDCPA.

*Zortman*, 2011 WL 1630935 *3. Defendant is making the same illogical arguments in this case, which should similarly be rejected for the reasons expressed in Plaintiff's principal memorandum and the Court in *Zortman.*

The Court in *Zortman* also rejected the argument that intent is a requirement under Section 1692c(b) and found that such "an interpretation is inconsistent with the ordinary meaning of 'to communicate'" since it is "possible to communicate with someone in spite of lacking a deliberate or purposeful intent to convey something to that particular person." *Id.* at *5. Moreover, to the extent that the FDCPA is ambiguous as to whether communicating requires deliberate or purposeful intent, "any such ambiguity vanishes on

---

harassing, abusive, false, deceptive, or misleading; and (3) were not material. After rejecting those arguments, the *Mark* Court addressed the constitutionality argument. If the semi-anonymous messages violated §§ 1692d(6) and 1692e(11), the defendant argued, then debt collectors would be prevented from leaving messages on answering machines and voicemail systems because compliance with §§ 1692d(6) and 1692e(11) risks violating § 1692c(b), amounting to an unconstitutional restriction of speech.

consideration of the FDCPA as a whole," because the FDCPA is a strict liability statute, which conflicts with requiring deliberate or purposeful intent. *Id. citing Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir.2001). Where Congress wanted to include an intent element as part of an FDCPA violation, it has done so explicitly: § 1692d(5) prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5) (emphasis added). The inclusion of an intent element in Section 1692d(5) strongly suggests that no such element is required by Section 1692c(b). *See Watt v. GMAC Mortg. Corp.,* 457 F.3d 781, 783 (8th Cir.2006) ("A standard axiom of statutory interpretation is *expressio unius est exclusio alterius,* or the expression of one thing excludes others not expressed.").

### ii. *Intent is irrelevant since Defendant does not assert the bona fide error defense.*

In arguing its actions did not violate the Act because it did not "intentionally" disclose Plaintiff's debt to a third party, Defendant is basically making short shrift of, or an end-run around the only available defense under the Act, that its actions were the result of a bona fide error.[10] The defense available under Section 1692k(c) is a narrow exception to the strict liability imposed by the FDCPA and provides that a debt collector is not liable in any action brought under the Act if the debt collector shows by a preponderance of evidence that: 1) the violation was not intentional, 2) that the error was bona fide, and 3) that the error resulted from a bona fide error notwithstanding the

---

[10] The deposition testimony of Defendant confirmed that it was not asserting the defense. *See Rothman Depo. at 50:25 – 51:5.*

7

maintenance of procedures reasonably adapted to avoid any such error. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA,* 130 S.Ct. 1605, 1608 (2010) (adopting a narrow construction of § 1692k(c) and holding that "not intentional" does not include violations resulting from mistakes of law). Defendant has affirmatively stated that it is not asserting the bona fide error defense in this case, nor has it made an argument that it applies, yet it attempts to argue that it has satisfied one of the three elements. Because Defendant has not asserted the defense, and in any event has not satisfied all the elements, its intent is completely irrelevant in determining liability under the Act and summary judgment should be granted in favor of Plaintiff.

   *iii.* ***Defendant's written communication violated Section 1692e(3).***

  Again, the letter Plaintiff received appears on Defendant's law firm letterhead. Its header reads "FREDERICK J. HANNA & ASSOCIATES, P.C., Attorneys at Law" and therein listed the names of ten attorneys. The letter is signed "Frederick J. Hanna & Associates, P.C." The body of the letter refers to "our client" and the first line states: "**I** had previously written to you regarding your debt obligation placed with **my** office for collection." (emphasis added).

  There is no genuine issue of material fact as to the level of involvement of any of the ten attorneys at Defendant's firm in connection with Plaintiff's account – there simply was none at all as admitted by Defendant. The fact that the form letter was originally drafted by a licensed attorney at some point in the past does not cure the false implication and representation that Plaintiff's account had been reviewed by an attorney. Everything that occurred with regard to Plaintiff's account was the result of automated computer

procedures, and it is clear that not a single live attorney made even a cursory review of Plaintiff's file as implied by the letter. There is no question that the language of the letter's contents, in addition to the letterhead and signature block, would lead the least sophisticated consumer, who would have no knowledge of Defendant's automated system, to believe an attorney had been involved to some degree with her file and the sending of the letter. Accordingly, summary judgment as to Defendant's liability for violating 15 U.S.C. § 1692e(3) should be granted.

## **CONCLUSION**

Defendant appears to frame its purported defense as to Plaintiff's third party disclosure claim brought under 15 U.S.C. § 1692c(b) as an issue of statutory construction, arguing on the one hand that the statute's meaning is plain on its face but then insinuating the statute is ambiguous and asking the Court to find a non-existent intent requirement in the FDCPA's strict liability statutory scheme. However, Section 1692c(b) unequivocally prohibits a debt collector from communicating the existence of a debt to any third party, whether directly or indirectly, unintentionally or intentionally. Moreover, other courts tasked with applying 15 U.S.C. § 1692e to nearly identical communications have determined the letters such as the February 9, 2010 letter sent to Plaintiff support a finding that Defendant engaged in prohibited conduct as a matter of law. For all of the above-stated reasons in addition to those explained in Plaintiff's original memorandum, Plaintiff hereby requests that the Court to grant her Motion for Partial Summary Judgment as to Defendant's Liability for violations of Sections 1692c(b) and 1692e(3).

Dated this <u>6th</u> day of May, 2011.

            Respectfully submitted,

             By: <u>s/Trista M Roy</u>
             CONSUMER JUSTICE CENTER, P.A.
            Trista M. Roy
            Attorney I.D. #0387737
            367 Commerce Court
            Vadnais Heights, Minnesota 55127
            Telephone:  (651) 770-9707

            *Attorney for Plaintiff*