**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jacquelyn Cordes,

                           Plaintiff,          Civ. No. 10-1344  (RHK/TNL)

v.                                       **MEMORANDUM OPINION**
                                                        **AND ORDER**

Frederick J. Hanna & Associates, P.C.,

                           Defendant.

---

Trista M. Roy, Consumer Justice Center, P.A., Vadnais Heights, Minnesota, for Plaintiff.

Thomas P. Kane, Paulette S. Sarp, Nadia B. Hasan, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, for Defendant.

---

**INTRODUCTION**

Plaintiff Jacquelyn Cordes ("Cordes") alleges in this action that Defendant Frederick J. Hanna & Associates, P.C. ("Hanna") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by (1) leaving multiple messages on her home voicemail that were overheard by others and (2) sending her a letter suggesting that an attorney had reviewed her account, when there had been no such review. Presently before the Court is Cordes's Motion for Partial Summary Judgment as to Hanna's liability.  For the reasons set forth below, the Court will grant her Motion.

## BACKGROUND

The pertinent facts are undisputed. At all relevant times, Cordes lived with her boyfriend, David Pitsch, and a friend, Jessica Joiner. The three shared voicemail on their home telephone number.

Prior to December 2009, Cordes incurred credit-card debt with Chase Bank ("Chase"). After her account became past-due, Chase transferred it to Hanna, a law firm, for collection. Between December 3, 2009, and January 20, 2010, Hanna left seven messages for Cordes on her home voicemail, identifying itself as a debt collector; some were heard by Pitsch and Joiner.

Hanna later sent Cordes a letter, dated February 9, 2010, on letterhead indicating it was from "FREDERICK J. HANNA & ASSOCIATES, P.C., Attorneys at Law." The letter provided:

> I had previously written you regarding your debt obligation placed with my office for collection. I had hoped that you would have satisfied this matter to avoid any additional collection activity.
>
> In order to resolve the account, our client is offering to settle this debt. The settlement offer is for $1,692.27, or 40% of the above unpaid balance. It must be received in our office within fifteen days from the date of this letter. Upon receipt, my client will be notified of the funds received, and they will mark the account settled. Our client makes no representation about tax consequences this may have or any reporting requirements that may be imposed on them. You should consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement.
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.

The letter was signed by "Frederick J. Hanna & Associates, P.C." rather than any individual attorney. Frederick J. Hanna, Hanna's principal, has acknowledged that this was a "form" letter, generated automatically "absent a certain code being added to a file" (which did not occur here). He has also acknowledged that none of Hanna's twelve attorneys reviewed Cordes's file before the letter was sent.

Cordes commenced this action in April 2010, asserting two claims against Hanna under the FDCPA: (1) the voicemails constituted prohibited communications with third parties, in violation of 15 U.S.C. § 1692c(b), and (2) the February 9, 2010 letter misleadingly implied that an attorney had reviewed her account when no such review had occurred, in violation of 15 U.S.C. § 1692e(3). She now moves for partial summary judgment as to Hanna's liability on these claims.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible

evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

### I. The FDCPA generally

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). It is intended "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318-319 (8th Cir. 2004). As this Court has previously noted, the FDCPA is a "broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied 'in a liberal manner.'" Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1063 (D. Minn. 2008) (Kyle, J.) (quoting Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001)). With these precepts in mind, the Court turns to Cordes's specific allegations.

### II. Section 1692c(b)

In her first claim, Cordes asserts that Hanna's voicemails violated 15 U.S.C. § 1692c(b). That portion of the FDCPA provides, in pertinent part:

> [W]ithout the prior consent of the consumer given directly to the debt collector . . .[,] a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Cordes argues that when Pitsch and Joiner heard the voicemails, Hanna's liability under this provision was triggered because it had "communicated" with a third party "in connection with the collection of" her debt.  (Pl. Mem. at 7-8.)  In response, while not disputing leaving the voicemails, Hanna argues that it cannot be liable because it did not *intentionally* communicate with Pitsch and Joiner; they simply heard voicemail messages it had left for Cordes.  (Def. Mem. at 8-14.)

In support of its argument, Hanna points to two decisions from this Court, <u>Baker v. Allstate Financial Services, Inc.</u>, 554 F. Supp. 2d 945, 950 (D. Minn. 2008) (Ericksen, J., adopting Report & Recommendation of Graham, M.J.), and <u>Mark v. J.C. Christensen & Associates, Inc.</u>, Civ. No. 09-100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) (Montgomery, J.).  Both cases are inapposite, as neither arose under Section 1692c(b).  <u>Baker</u> analyzed a claim under a different section of the FDCPA, 15 U.S.C. § 1692d(6), which prohibits debt-collection telephone calls without meaningful disclosure of the caller's identity.  <u>Mark</u> addressed that same section of the FDCPA, in connection with the defendant's claim that it was an unconstitutional restraint on commercial speech in violation of the First Amendment.  In passing, both <u>Baker</u> and <u>Mark</u> suggested that unintentional disclosures to third parties would not support a claim under Section 1692c(b).  <u>See</u> <u>Baker</u>, 554 F. Supp. 2d at 950; <u>Mark</u>, 2009 WL 2407700, at *5.  But in neither case was this Court expressly called upon to determine whether an unintentional disclosure to a third party triggers liability under this section.

However, another decision from this Court, which was decided little more than one month ago, directly answered this question. In Zortman v. J.C. Christensen & Associates, Inc., Civ. No. 10-3086, 2011 WL 1630935 (D. Minn. Apr. 29, 2011) (Ericksen, J.), the debt-collector defendant left several voicemail messages for the plaintiff on her home and cellular phones, which were overheard by her children. The plaintiff claimed that the messages violated Section 1692c(b), and the defendant responded that it could not be held liable because it did not "purposefully or deliberately disclose . . . information to a third party." Id. at *1. The Court rejected this argument.

Zortman offered several persuasive reasons why the defendant's argument did not hold water. It noted that Section 1692c(b), on its face, contains no scienter requirement, unlike other portions of the FDCPA. Id. at *5 ("Where Congress wanted to include an intent element as part of an FDCPA violation, it has done so explicitly."). It also recognized that the FDCPA is a strict-liability statute, "which conflicts with requiring deliberate or purposeful intent." Id.; accord, e.g., Lovelace v. Stephens & Michaels Assocs., Inc., No. 07-10956, 2007 WL 3333019, at *3 (E.D. Mich. Nov. 9, 2007) ("The FDCPA, including § 1692c(b), is a strict liability statute and therefore does not require a showing of intentional conduct on the part of a debt collector to give rise to liability."). In addition, Zortman pointed out that the term "communicate" does not focus on the intended recipient, but rather turns on whether the speaker "shares with or conveys information to another" – "for example, one may communicate with an unintended audience." 2011 WL 1630935, at *5; see also 15 U.S.C. § 1692a(2) (defining "communication" as "the conveying of information regarding a debt directly *or indirectly*

to any person through any medium") (emphasis added).[1] Finally, Zortman recognized that the FDCPA's "bona fide error defense"[2] was inconsistent with a requirement that a debt collector purposefully or intentionally communicate with a third party in order to be held liable. 2011 WL 1630935, at *5.

Several other district courts have reached the same conclusion as Zortman. See, e.g., Leahey v. Franklin Collection Serv., Inc., 756 F. Supp. 2d 1322, 1327 (N.D. Ala. 2010); Berg v. Merchs. Ass'n Collection Div., 586 F. Supp. 2d 1336, 1341 (S.D. Fla. 2008); FTC v. Check Enforcement, No. Civ. A. 03-2115, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005). The undersigned fully agrees with the reasoning in these cases (and Zortman) and will follow them here. Accordingly, the Court rejects Hanna's argument that it cannot be liable here absent intentional or deliberate disclosure to Pitsch and Joiner. And because Hanna raises no other argument to avoid liability, and because

---

[1] Pointing to legislative history, Hanna argues that Congress intended the word "communicate" to mean "contact." (Mem. in Opp'n at 10.) But the FDCPA expressly defines the term "communication," see 15 U.S.C. § 1692a(2), and the Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). In any event, the Court perceives no material difference between the word "communicate" and the word "contact." See The American Heritage Dictionary 315 (2d coll. ed. 1985) (defining "contact" as "[t]he state of being in communication").

[2] The "bona fide error defense" offers debt collectors "a narrow exception to the strict liability imposed by the FDCPA." Zortman, 2011 WL 1630935, at *5. It provides that a debt collector may escape liability "if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). As Zortman observed, "[i]f violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's 'not intentional' element would tend toward surplusage." 2011 WL 1630935, at *5. Notably, Hanna has expressly disavowed relying upon the bona fide error defense in this case (see Hanna Dep. at 50-51), and in any event did not assert the defense in its Answer. See Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 498 (8th Cir. 2010) (noting that affirmative defense not raised in answer is generally forfeited).

there is no dispute that Pitsch and Joiner heard at least some of the messages Hanna left for Cordes, the Court determines that she is entitled to judgment in her favor as to Hanna's liability under Section 1692c(b).

**III.     Section 1692e(3)**

The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It enumerates a non-exhaustive list of sixteen debt-collection practices that run afoul of this proscription, including "the false representation or implication that [a] communication is from an attorney." Id. § 1692e(3). A substantial number of courts have held that a debt-collection letter from a law firm or lawyer violates Section 1692e(3) if an attorney was not "directly and personally involved" with the debtor's account – such as by reviewing the debtor's file – before the letter was sent. See, e..g, Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1237-38 (5th Cir. 1997); Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1320-21 (2d Cir. 1993); Martsolf v. JBC Legal Grp., P.C., No. 1:04-CV-1346, 2008 WL 275719, at *7 (M.D. Pa. Jan. 30, 2008); Sonmore v. Checkrite Recovery Servs., Inc., 187 F. Supp. 2d 1128, 1133 (D. Minn. 2001) (Alsop, J.); but see Danielson v. Hicks, Civ. No. 3-94-1053, 1995 WL 767290 (D. Minn. Oct. 26, 1995) (Davis, J.).[3] This is because letters on law-firm letterhead imply meaningful attorney involvement, which does not exist absent participation by an attorney in the debt-collection process. See, e.g., Greco v. Trauner,

---

[3] Hanna acknowledges the conflict between Danielson and Sonmore and urges the Court to follow the former case. (See Mem. in Opp'n at 16 n.5.) The Court declines to do so in light of, in its view, the better-reasoned cases to the contrary, as referenced above.

Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005) ("[W]e [have] established that a letter sent on law firm letterhead . . . does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is . . . misleading within the meaning of the FDCPA.").[4]

Cordes asserts that the letter she received from Hanna violated Section 1692e(3) because it falsely implied that one of its attorneys had performed a meaningful review of her account before sending the letter, when in fact no such review had occurred. Hanna acknowledges that no attorney personally reviewed Cordes's file or the letter "automatically" sent to her before it was mailed. (Hanna Dep. at 45-48.) It also acknowledges that the letter was a "form letter." (Id.) Nevertheless, it contends that the letter did not violate Section 1692e(3) because its "form" contents were created by an attorney (Frederick J. Hanna) and it was sent pursuant to his standing instructions. (Mem. in Opp'n at 14.) This, however, does not constitute meaningful attorney involvement.

---

[4] This is not to say that a law firm can *never* send a debt-collection letter without an attorney's meaningful involvement in the collection process, but it may do so only if it "includes *disclaimers* that . . . make clear . . . that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." Greco, 412 F.3d at 364 (emphasis in original). Indeed, in another case brought against Hanna, the letter in question was on the same letterhead as the letter to Cordes here but also contained the disclaimer, "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Walsh v. Frederick J. Hanna & Assocs, P.C., No. 2:10-cv-02720, 2010 WL 5394624, at *2 (E.D. Cal. Dec. 21, 2010). Walsh found no violation of the FDCPA because, in light of the disclaimer, the letter could not, and did not, falsely or misleadingly imply meaningful attorney involvement. Id. at *3. No similar disclaimer is found in the letter here.

The Second Circuit confronted similar facts in Clomon. There, the attorney defendant approved the form of dunning letters[5] sent by a collection agency and also "approved the procedures according to which th[e] letters were sent." 988 F.2d at 1317. He did not have any specific involvement with each debtor's account, however, such as reviewing the debtor's file or the particular letter being mailed. Id. The Second Circuit concluded that the challenged letters, despite bearing the defendant attorney's signature, violated Section 1692e(3) because, although *literally* "from" an attorney, they "were not 'from' [him] in any meaningful sense of that word." Id. at 1320; accord, e.g., Avila, 84 F.3d at 229. The same result should obtain here.[6]

Pointing to Mizrahi v. Network Recovery Services, Inc., No. 98-CV-4528, 1999 WL 33127737 (E.D.N.Y. Nov. 5, 1999), Hanna argues that it is lawful for a law-firm staff member to send a debt-collection letter on the firm's letterhead. (Mem. in Opp'n at 15-17.) But Mizrahi involved facts dissimilar to the case at bar. Indeed, the evidence there showed that an attorney performed an initial review of every file she received, which lasted between two and four hours. 1999 WL 33127737, at *2. As a result, it was

---

[5] "'Dun' means to demand payment from a delinquent debtor. Debt-collection letters, therefore, are frequently referred to as 'dunning letters.'" Owens, 550 F. Supp. 2d at 1063 n.1 (internal citation omitted).

[6] Hanna argues that Clomon is distinguishable because the letters there bore the signature of a *specific* attorney, whereas the letter here is signed "Frederick J. Hanna & Associates, P.C." (See Mem. in Opp'n at 14-15.) This is a distinction without a difference. Just as a "letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent," a dunning letter "on an attorney's letterhead conveys" the same message. Avila, 84 F.3d at 229. This is particularly true given that dunning letters are reviewed for unlawfulness using an "unsophisticated-consumer" standard. E.g., Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000). Accepting Hanna's argument would mean that a lawyer could easily skirt the FDCPA simply by placing his law firm's name at the bottom of a dunning letter rather than his own.

clear that "the involvement of the defendant [attorney] in the [debt-collection] process [was] both personal and substantial." Id. at *4. No similar facts exist here.

The Court concludes that Hanna's letter violated Section 1692e(3) under the undisputed facts of this case.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Cordes's Motion for Partial Summary Judgment (Doc. No. 18) is **GRANTED**. As a result, only the issue of Cordes's damages remains for trial.[7]

Dated: June 7, 2011 

s/Richard H. Kyle  
RICHARD H. KYLE  
United States District Judge

---

[7] The Court reminds the parties that this case is on the September 2011 trial calendar. The parties should be fully prepared to try this matter by September 1, 2011.